## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **RUTH ROWE and HORACE ROWE** | : | **CIVIL ACTION NO.** |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| **AFFORDABLE MOTORS, INC.,** and | : | |
| **CREDIT ACCEPTANCE CORP.** | : | |
| Defendants | : | **SEPTEMBER 23, 2017** |

## COMPLAINT

**INTRODUCTION AND JURSDICTIONAL ALLEGATIONS**

1. This is a suit brought by consumers against Affordable Motors, Inc. ("Affordable Motors") for violations of the Truth in Lending Act ("TILA") 15 U.S.C. §§ 2301 *et seq.*, and for pendent state law claims under Article 2 of the Connecticut Uniform Commercial Code, Conn. Gen. Stat. §§ 42a-2-101 *et seq.*, the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a *et seq.*, and the Connecticut Retail Installment Sales Finance Act ("RISFA"), Conn. Gen. Stat. 36a-770 *et seq.* Plaintiff alleges breach of warranty against Affordable Motors. Plaintiff also has claims against Credit Acceptance Corporation ("CAC"), the assignee of the retail installment contract.

2. Plaintiffs, Ruth and Horace Rowe ("Plaintiffs") are natural persons residing in Bridgeport, Connecticut.

3. Affordable Motors is a Connecticut corporation that operates an automobile dealership in Bridgeport, Connecticut.

4. CAC is a Michigan corporation with headquarters in that state.

5. Jurisdiction in this Court is proper pursuant to 15 U.S.C. § 1640(e) and 28 U.S.C. § 1331.

6. This Court has jurisdiction over Affordable Motors because it is organized under the laws of this state and regularly conducts business in this state.

7. This Court has jurisdiction over CAC because it regularly conducts business in this state by accepting assignment of retail installment sales contracts from Connecticut motor vehicle dealerships.

8. Venue in this Court is proper because the Plaintiffs and Affordable Motors are Connecticut residents and the transaction alleged herein occurred in this state.

**ALLEGATIONS OF FACT**

9. In September 2016, plaintiff Horace Rowe was a college student attending school in Albany, NY.

10. On or about September 19, 2016, he saw an advertisement on Affordable Motors' website for a black 2007 BMW 3-Series bearing VIN identification number WBAVC735X7KP35013 (the "Vehicle").

11. Mr. Rowe called Affordable Motors about the Vehicle and spoke with an employee named Renetta. He indicated that he was attending college in upstate New York, but that his mother, plaintiff Ruth Rowe, and his uncle, Mr. Clarence Lindo, would like to come to the dealership to inspect the Vehicle for him.

12. On or about September 20, 2016, Ms. Rowe and Mr. Lindo visited Affordable Motors to inspect the Vehicle and met with Renetta, the dealership representative with whom Mr. Rowe had previously spoken.

13. On September 21, Mr. Rowe purchased a Greyhound bus ticket and travelled from Albany, NY to Affordable Motors, where he placed a $100.00 deposit on the Vehicle.

14. On September 24, 2016, Plaintiffs returned to Affordable Motors to test drive the Vehicle.

15. Affordable Motors told Plaintiffs that the Vehicle with 99,125 miles was safe, reliable and in excellent condition.

16. After test driving the Vehicle, Ruth Rowe signed a purchase order and invoice prepared by Affordable Motors.

17. The Vehicle was one of two black BMW 3-Series that Affordable Motors had available for sale. The Vehicle Plaintiffs were interested in purchasing had 99,125 miles on it. The other BMW had a mileage over 103,000.

18. Affordable Motors generated an electronic retail installment contract (the "Contract") containing the purported terms of the transaction and listing Ruth Rowe as they buyer and Horace Rowe as the co-buyer.

19. Plaintiffs provided Affordable Motors with a $3,5000.00 down payment for the Vehicle.

20. The purchase order and Contract listed a cash price of $11,995.00, and a total cash price, following the addition of various fees, taxes and costs, of $16,493.87.

21. Plaintiffs asked why the cash price was higher than the advertised price.

22. Affordable Motors stated that the advertised price was for customers paying in cash and the higher amount of $11,995.00 was the cost for a financed purchase.

23. The purchase order and Contract included a $2,204.00 charge for a service contract and a $674.00 charge for GAP Insurance even though Plaintiffs neither requested nor desired these items.

24. Affordable Motors did provide Plaintiffs with a copy of the purchase order, invoice or Contract at the time of signing in violation of Conn. Gen. Stat. § 14-62a.

25. CAC was the assignee of the Contact and, under its terms, is subject to all claims and defenses that the Plaintiffs could assert against Affordable Motors up to the amounts paid.

26. Affordable Motors did not provide the Plaintiff with a valid certificate of title, assignment and warranty of title or other evidence of title in violation of Conn. Gen. Stat. § 14-62(d).

27. Affordable Motors did not give Plaintiffs a copy of the Vehicle's Connecticut Department of Motor Vehicles K-208 Form, which provides consumers with the results of the comprehensive safety inspection used car dealers must conduct before offering a vehicle for sale, in violation of Conn. Gen. Stat. § 14-62(g).

28. Plaintiffs and Affordable Motors agreed that Affordable Motors would deliver the Vehicle to Plaintiffs on October 1, 2016.

29. On October 1, 2016, Plaintiff Ruth Rowe and Mr. Clarence Lindo returned to the dealership, but Affordable Motors did not deliver the Vehicle identified in the purchase order and Contract.

30. Affordable Motors attempted to deliver the other black, BMW 3-Series that it had for sale, as though it was the Vehicle the Plaintiffs had agreed to purchase.

31. The Ms. Rowe recognized the other BMW because they had seen it the week before and because the odometer indicated a mileage over 103,000.

32. Ms. Rowe told Affordable Motors that this was not the car they had contracted for.

33. Ms. Rowe notified Affordable Motors that she refused to accept the other BMW.

34. Ms. Rowe demanded a refund of the deposit and down payment but Affordable Motors refused.

35. Affordable Motors subsequently admitted to Plaintiffs that it delivered them the wrong car.

4

36. Shortly after leaving the dealership, Plaintiffs contacted CAC and informed them of the events described above.  CAC indicated that it would begin an investigation of the matter.

37. Pursuant to the Contract, the first monthly payment was supposed to be due on October 24, 2016.

38. On October 29, 2016, CAC issued an order for voluntary repossession and the Vehicle was repossessed from its location at Affordable Motors, where it had at all times remained.

39. CAC failed to provide Plaintiffs with notice of the repossession before it occurred.

40. On November 18, 2016, CAC sent a letter to each Plaintiff that stated: "We have your vehicle described above because you broke promises in our agreement.  We may sell the vehicle at private sale sometime after 12/05/16."

41. CAC's November 18, 2016 letters did not state the unaccelerated amount due and the actual and reasonable expenses of the retaking in violation of Conn. Gen. Stat. § 36a-785(c).

42. On February 14, 2017, CAC sold the Vehicle at auction.

43. CAC presently seeks a deficiency payment from the Plaintiffs in the amount of $2,271.62 plus fees, costs and interest.

44. CAC negatively affected the Plaintiffs' credit rating by reporting the repossession to the credit rating agencies.

45. The appearance of a recent repossession on plaintiff Horace Rowe's credit history caused Mr. Rowe to be denied student loans for which he applied.  As a result, he and Plaintiff, Ruth Rowe were forced to pay approximately $18,000 out of their own pocket for him to continue his college education.

**COUNT ONE – Violation of the Truth in Lending Act (Against Affordable Motors, LLC and Credit Acceptance Corp.)**

46. Plaintiff hereby incorporates paragraphs 1 through 45 as if fully set forth herein.

47. TILA and its implementing regulation, Regulation Z, require that certain material disclosures be provided to consumers before completion of a loan contract. 15 U.S.C. § 1638(a)-(b), 1026.18.  These material disclosures include the finance charge and annual percentage rate ("APR").

48. In the course of extending credit, Affordable Motors failed to provide the Plaintiffs with accurate disclosures of financial information required by TILA and Regulation Z.

49. Affordable Motors charged a higher price for a vehicle purchased on credit than would have been charged in a cash transaction, and failed to accurately disclose the terms of the credit transaction in violation of TILA.

50. Affordable Motors added approximately $1,195.00 to the Vehicle's advertised price because the Plaintiffs financed the purchase instead of paying cash.

51. This additional cost was related to the extension of credit and therefore required to be disclosed as a finance charge.

52. Affordable Motors did not disclose this amount as part of the finance charge, but as part of the amount financed.  By improperly increasing the amount financed, Affordable Motors forced Plaintiffs to pay additional finance charges and sales tax.

53. As a result of including additional costs as part of the finance charge, Affordable Motors failed to accurately provide Plaintiff with required disclosures pursuant to 15 U.S.C. § 1638(a).

54. When properly treated as a finance charge, the annual percentage rate of interest exceeds the 19% limit established by RISFA, Conn. Gen. Stat. §36a-772.

55. Affordable Motors also did not include the Plaintiff's $100.00 deposit in the Contract.

56. Because of this omission, Affordable Motors provided Plaintiff an inaccurate annual percentage rate ("APR") on Plaintiff's purchase order, retail installment contract and invoice.

57. When the deposit is properly accounted for, the actual APR is revealed to be above the 19% maximum established by Conn. Gen. Stat. §36a-772.

58. Plaintiffs have been harmed by Affordable Motors' TILA violations because inaccurate disclosures underrepresented the true cost of credit and increased the cost of the Vehicle.

59. For its violations of TILA, Affordable Motors is liable to Plaintiffs for double the finance charge, capped at $2,000.00, plus a reasonable attorney's fee.

**COUNT TWO -  Breach of Express Warranty Pursuant to Conn. Gen. Stat. § 42a-313 (Against Affordable Motors, LLC)**

60. Plaintiff hereby incorporates paragraphs 1 through 45 as if fully set forth herein.

61. Plaintiffs are "buyers" as defined in Conn. Gen. Stat. § 42a-2-103(1)(a) and § 42a-2-313(1) respectively.

62. Affordable Motors is a "seller" and "merchant" pursuant to Conn. Gen. Stat. § 42a-2-313(1) and § 42a-2-104(1) respectively.

63. The Vehicle is a "good" as defined in Conn. Gen. Stat. § 42a-2-105.

64. The Vehicle was subject to express warranties, as defined in Conn. Gen. Stat. § 42a-2-313 running from Affordable Motors to the Plaintiff.

65. Affordable Motors made representations and affirmations of fact about the condition of the Vehicle that the Plaintiff relied on and which became a part of the basis of the bargain. Those representations and affirmations of fact constituted express warranties pursuant to Conn. Gen. Stat. § 42a-2-313 and cannot be waived by operation of Conn. Gen. Stat. § 42-224(c).

66. Affordable Motors warranted that it would deliver to the Plaintiffs the black 2007 BMW 3-Series which bore the VIN identification number WBAVC735X7KP35013 and possessed a mileage of 99,125.

67. Affordable Motors failed to deliver that specific Vehicle.  Instead, it delivered a different used car, inferior in quality to that which was identified in the purchase order and Contract.

68. Some or all of Affordable Motors's breaches of express warranty were tortious in nature, in bad faith, were wanton and malicious, outrageous, and were undertaken with bad motive and with a reckless indifference to Plaintiffs' interests and the injuries that they sustained, entitling Plaintiffs to common law punitive damages.

**COUNT THREE – Violation of the Connecticut Unfair Trade Practices Act, Conn. Gen Stat. § 42-110(b) et seq. (Against Affordable Motors)**

69. Plaintiff hereby incorporates paragraphs 1 through 45 as if fully set forth herein.

70. Affordable Motors has engaged in unfair acts and practices in trade or commerce in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.* in connection with the transaction as follows:

   a. It failed to accurately disclose the amount financed, finance charge and annual percentage rate in violation of TILA;

   b. It failed to provide Plaintiffs with a copy of Connecticut DMV form K-208, evidencing the results of the comprehensive safety inspection used car dealers are required to complete before offering a vehicle for retail sale, in violation of Conn. Gen. Stat. § 14-62(g), and a *per se* violation of CUTPA pursuant to Conn. Agency Regs. § 42-110b-28(b)(23);

   c. It charged an APR greater than 19% in violation of Conn. Gen. Stat. §36a-772, and a *per se* violation of CUTPA pursuant to Conn. Agency Regs. § 42-110b-28(b)(23);

  d. It made false and deceptive statement about the Vehicle in violation of Conn. Gen. Stat. § 42-225(a), and a *per se* violation of CUTPA pursuant to Conn. Agency Regs. § 42-110b-28(b)(23);

  e. It failed to provide Plaintiffs with a copy of the Vehicle's buyers guide in violation of the federal Used Motor Vehicle Rule, 16, C.F.R. § 455.3;

  f. It attempted to mislead the Plaintiffs into accepting delivery of a consumer good they did not contract for;

  g. It included items or services not specifically ordered by the buyer in violation of C.G.S. § 14-62(b), and a *per se* violation of CUTPA pursuant to Conn. Agency Regs. § 42-110b-28(b)(23);

  h. It sold a motor vehicle for more than its advertised price in violation of Conn. Agency Regs. § 42-110b-28(b)(1);

  i. It breached an express warranty to deliver the Vehicle to the Plaintiff, in violation of Conn. Gen. Stat. § 42-221, and a *per se* violation of CUTPA pursuant to Conn. Agency Regs. § 42-110b-28(b)(23).

71. As a result of the aforedescribed conduct, Affordable Motors is liable to Plaintiffs for their damages, punitive damages, and costs and attorney's fees.

72. Plaintiff also seeks as an equitable remedy, an order that the purchase is rescinded.

**COUNT FOUR – Violation of Connecticut Creditors Protection Act, Conn. Gen. Stat. § 36a-645 *et seq.* (against Credit Acceptance Corp.)**

73. Plaintiffs hereby incorporates paragraphs 1 through 45 as if fully set forth herein.

74. Plaintiffs are consumer debtors pursuant to Conn. Gen. Stat. § 36a-648(1).

75. CAC is a creditor pursuant to Conn. Gen. Stat. § 36a-648(2)(B).

76. CAC sought to recover a debt from the Plaintiffs, as that term is defined in Conn. Gen. Stat. § 36a0648(1).

77. CAC knew that Plaintiffs rejected acceptance of the Vehicle.

78. CAC failed to conduct a reasonable investigation of the events described above after receiving notice from the Plaintiffs and

79. CAC received notice from the Plaintiffs of the events described above and failed to conduct a reasonable investigation, despite telling Plaintiffs that it would do so.

80. On October 29, 2016, just five days after the first payment was allegedly due, CAC ordered a third-party tow truck vendor to repossess the Vehicle.

81. To help its towing vendor locate the Vehicle, CAC identified 408 Grand St., Bridgeport, CT 06604 as the Plaintiffs' home address.

82. 408 Grand St., Bridgeport, CT 06604 is the address of Affordable Motors, where CAC knew the car was located.

83. As described above, CAC engaged in fraudulent, misleading and/or deceptive acts in an attempt to collect a debt in violation of Conn. Gen. Stat. § 36a-646.

84. CAC's actions caused the Plaintiffs to suffer damages.

85. As a result of its conduct, CAC is liable to Plaintiffs for their damages, including reasonable attorney's fees.

**COUNT FIVE -- Violation of the Connecticut Unfair Trade Practices Act (against Credit Acceptance Corp.)**

86. Plaintiffs hereby incorporate paragraphs 1 through 45 and paragraphs 47 through 58 of Count One as if fully set forth herein.

87. CAC has engaged in unfair acts and practices in trade or commerce in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.* in connection with the transaction as follows:

    a.  It repossessed the Vehicle despite knowing that the Plaintiffs rejected acceptance;

    b.  It negatively impacted Plaintiffs credit rating by reporting a wrongful repossession to the credit rating agencies;

    c.  It failed to, within three days or repossession, provide the Plaintiffs with a written statement of the amount due under the contract and the amount due for repossession and storage costs in violation of Conn. Gen. Stat. § 36a-375(c).

88. As a result of the aforedescribed conduct, CAC is liable to Plaintiffs for their damages, punitive damages, and costs and attorney's fees.

89. Plaintiff also seeks as an equitable remedy, an order that the purchase is rescinded.

WHEREFORE, the Plaintiff seeks actual damages, statutory damages, common law punitive damages, statutory punitive damages, an order rescinding the sale, attorney's fees and costs.

    PLAINTIFFS RUTH ROWE and
    HORACE ROWE

    By: /s/ Jesse C. Clark
    Jesse C. Clark, ct27448
    Churchill Law Group, LLC
    543 Prospect Avenue
    Hartford, CT 06105
    Tel. (860) 836-7881
    Fax (860) 236-2234
    Jcclark.law@gmail.com