# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

RUTH ROWE and HORACE ROWE,
    *Plaintiffs*,

v.

AFFORDABLE MOTORS, INC. and
CREDIT ACCEPTANCE CORP.,
    *Defendants*.

No. 3:17-cv-1592 (VAB)

## RULING AND ORDER ON MOTION TO COMPEL ARBITRATION AND STAY ALL PROCEEDINGS

On April 23, 2018, Defendant Credit Acceptance Corporation ("Credit Acceptance" or "CA") filed a motion to compel arbitration and stay all proceedings in this action. Motion to Compel Arbitration, dated Apr. 23, 2018 ("CA Mot."), ECF No. 20. Ruth Rowe and Horace Rowe ("Plaintiffs") have failed to file any opposition to the motion for over seven months, and have not responded to an Order to Show Cause directing any such response to be filed by November 6, 2018.

As explained below, because Mr. and Ms. Rowe's failure to respond may be deemed sufficient cause to grant the motion, and because the motion and pleadings do not provide any basis for the Court to otherwise deny the motion, Credit Acceptance's motion to compel arbitration and stay all proceeding is **GRANTED**.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Allegations

The original transaction that gave rise to this litigation is not in dispute. On September 24, 2016, Ruth Rowe and her son Horace Rowe ("Plaintiffs"), both residents of Bridgeport, Connecticut, entered into a Retail Installment Contract to purchase a used 2007 BMW 3-series

automobile from Affordable Motors, Inc. ("Affordable Motors"), a Connecticut corporation that operates an automobile dealership in Bridgeport, Connecticut. *See* Complaint, dated Sept. 23, 2017 ("Compl."), ECF No. 1, ¶¶ 2, 3, 9, 14–19; Memorandum of Law in Support of CA Mot., dated Apr. 23, 2018 ("CA Mem."), annexed to CA Mot., ECF No. 20-1, at 2–3. Credit Acceptance, a Michigan corporation, "was the assignee of the contract and, under its terms, subject to all claims and defenses that Plaintiffs could assert against Affordable Motors up to the amounts paid." Compl. ¶¶ 4, 25.

The Rowes, however, allege, *inter alia*, that Affordable Motors charged them a higher price than was advertised, attempted to deliver a different BMW 3-series than the one they had purchased, and—when the Rowes would not accept the different vehicle—refused to refund the Rowes' deposit and down payment. *Id.* ¶¶ 20–24, 26–35. They further allege that after this, they contacted Credit Acceptance, which stated it would investigate the matter. *Id.* ¶ 36. The Rowes allege, however, that Credit Acceptance subsequently claimed the Rowes had violated the contract, "repossessed" and sold the undelivered car, and began pursuing a $2,271.62 deficiency payment, plus fees, costs, and interest, against the Rowes. *Id.* ¶¶ 37–43. The Rowes allege that Credit Acceptance's actions have negatively affected their credit rating, which they allege caused Mr. Rowe to be denied student loans necessary to afford his college education. *Id.* ¶¶ 44–45.

### B. Procedural History

On September 23, 2017, the Rowes sued Affordable Motors and Credit Acceptance ("Defendants"), alleging that Defendants' actions violated, *inter alia*, express warranties to the Rowes, the Truth in Lending Act, 15 U.S.C. § 2301 *et seq.*, the Connecticut Unfair Trade Practices Act ("CUTPA"), CONN. GEN. STAT. § 42-110a *et seq.*, and the Connecticut Creditors Protection Act, CONN. GEN. STAT. § 36a-645 *et seq. Id.* ¶¶ 46–89. The Rowes seek "actual

damages, statutory damages, common law punitive damages, statutory punitive damages, an order rescinding the sale, attorney's fees and costs." *Id.* at 11.

After a significant period of delay, Affordable Motors and Credit Acceptance were served on February 26, 2018 and March 8, 2018, respectively. *See* Summons Returned Executed, filed Mar. 2, 2018, ECF No. 10; Summons Returned Executed, filed Mar. 8, 2018, ECF No. 11. Defendants subsequently moved for and were granted three extensions of time to answer, move, or otherwise respond to the Complaint. *See* Orders, dated Mar. 21, 2018, Mar. 27, 2018, and Apr. 22, 2018.

On April 23, 2018, Credit Acceptance filed a motion to compel arbitration and stay all proceedings in this action under Sections 2 through 4 of the Federal Arbitration Act ("FAA"). CA Mot. Credit Acceptance asserts that Affordable Motors assigned all "right, title and interest, including its security interest, in and to the Contract and the Vehicle," to Credit Acceptance. CA Mem. at 2.

Credit Acceptance alleges that Plaintiffs agreed to be bound by an arbitration clause contained in the Retail Installment Contract. That provision states that either party (including Credit Acceptance) "may require any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute or with respect to other Disputes or counterclaims brought later in the lawsuit." *See* Retail Installment Contract, dated Sept. 24, 2016 ("Contract"), annexed as Ex. A to Mem., ECF No. 20-2, at 4–5.

Credit Acceptance therefore contends that "since the parties have unequivocally agreed that, after invocation by one of the parties, whether before or after a lawsuit has been started . . . any and all Disputes arising out of or in any way related to the Contract should be resolved by binding arbitration pursuant to the rules and procedures of either [the American Arbitration

3

Association] or JAMS, this Court should compel arbitration and stay this action pending arbitration." CA Mem. at 5.

More than six months have passed since Credit Acceptance moved to compel arbitration, and no opposition has been filed. Based on the lack of activity on the docket, Plaintiffs have also failed to otherwise attempt to prosecute this action.

On October 23, 2018, the Court ordered Plaintiffs to show cause why the motion to compel should not be granted by November 6, 2018. Order to Show Cause, dated Oct. 23, 2018, ECF No. 25. To date, Plaintiffs—who are represented by counsel—have not responded to the Court's Order.

## II.   LEGAL STANDARD

"Failure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion, except where the pleadings provide sufficient grounds to deny the motion." D. Conn. L. Civ. R. 7(a)(2).

The FAA "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). Section 2 of the FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the FAA enables any "party aggrieved" by the failure of another to arbitrate under a written agreement for arbitration to petition a United States District Court "for an order directing that such arbitration shall proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Courts follow a two-part test to determine whether claims are subject to arbitration considering "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). "A court may not deny arbitration where there is a valid arbitration agreement that covers the asserted claims." *Davis v. Macy's Retail Holdings, Inc.*, No. 3:17-cv-1807 (JBA), 2018 WL 4516668, at *2 (D. Conn. Oct. 22, 2018) (citation omitted).

In the context of a motion to compel arbitration brought under the FAA, courts apply "a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003); *see also McAllister v. Conn. Renaissance Inc.*, No. 3:10-cv-1488 (WWE), 2011 WL 1299830, at *3 (D. Conn. Apr. 5, 2011) (applying summary judgment standard in the context of a motion to compel arbitration). The party seeking to compel arbitration must "substantiate [its] entitlement [to arbitration] by a showing of evidentiary facts" that support its claim that the other party agreed to arbitration. *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995). "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Id.* If the evidence suggests a genuine issue of material fact, the district court must summarily proceed to trial. *Bensadoun*, 316 F.3d at 175 (citing 9 U.S.C. § 4).

The district court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3; *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)

5

("The district court must stay proceedings once it is 'satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding.'") (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997)).

### III. DISCUSSION

Credit Acceptance argues that the parties entered into a valid agreement to arbitrate and that the dispute clearly falls within the scope of the arbitration agreement. Based on the evidence before the Court, and in the absence of any showing by Plaintiffs that there is any genuine dispute as to either of these issues, the Court agrees.

**A. Validity of Agreement to Arbitrate**

Whether the Retail Installment Contract was a valid agreement to arbitrate is a matter of state contract law. *See First Options of Chi. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.") (citations omitted); *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012) ("Whether or not the parties have agreed to arbitrate is a question of state contract law.") (citations omitted); *Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.*, 189 F.3d 289, 295–96 (2d Cir. 1999) ("[W]hile § 2 of the FAA preempts state law that treats arbitration agreements differently from any other contracts, it also 'preserves general principles of state contract law as rules of decision on whether the parties have entered into an agreement to arbitrate.'") (quoting *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993)).

In Connecticut, a contract is formed through an offer and an acceptance of that offer. *See Bridgeport Pipe Eng'g co. v. DeMatteo Constr. Co.*, 159 Conn. 242, 246 (1970) ("It is

6

elementary that to create a contract there must be an unequivocal acceptance of an offer . . . . The acceptance of the offer must, however, be explicit, full and unconditional.") (citations omitted); *see also Ubysz v. DiPietro*, 185 Conn. 47, 51 (1981) ("[I]n order to form a contract, generally there must be a bargain in which there is a manifestation of mutual assent to the exchange between two or more parties; and the identities of the contracting parties must be reasonably certain.") (internal citations omitted).

Here, the Retail Installment Contract was electronically signed by Ms. Rowe and Mr. Rowe on September 24, 2016. *See* Contract at 2. Plaintiffs admit that they signed the Contract and therefore agreed to be bound by its terms, including the agreement to arbitrate. *See* Compl. ¶¶ 18, 24, 32. The first page of the Contract clearly indicates that the agreement to arbitrate was part of the contract terms. *See* Contract at 1. Plaintiffs also electronically initialed the two pages containing the agreement to arbitrate. *See id.* at 4–5. In addition, Plaintiffs physically signed a separate document generated by Credit Acceptance acknowledging that they had electronically signed "all documents necessary to process a retail installment transaction" with Affordable Motors. *See* Declaration Acknowledging Electronic Signature Process, dated Sept. 26, 2016, annexed as Ex. B to CA Mem, ECF No. 2.

The arbitration agreement explicitly provided Plaintiffs thirty days to reject the clause—without affecting any of their other rights under the Contract—by mailing a written rejection notice, postmarked thirty days or less after the date of the Contract, to a Michigan post office box. *See* Contract at 4; Mem. at 4. Credit Acceptance contends that Plaintiffs never used this procedure to opt out of the agreement. Mem. at 4. Plaintiffs' pleadings do not discuss arbitration, nor do they contain any indication that they opted out of the arbitration agreement.

Because Credit Acceptance has submitted evidentiary facts showing that an agreement to arbitrate was formed, and because Plaintiffs have failed to submit facts showing a dispute, the Court concludes that a valid agreement to arbitrate was formed under Connecticut law. *See Oppenheimer*, 56 F.3d at 358.

### B. Scope of Arbitration Agreement

"In accordance with the strong federal policy in favor of arbitration, the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it 'may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *WorldCrisa*, 129 F.3d at 74 (quoting *Assoc. Brick Mason Contractors of Greater N.Y., Inc. v. Harrington*, 820 F.2d 31, 35 (2d Cir. 1987)).

"When considering whether claims fall within the scope of an arbitration clause . . . we analyze the factual allegations made" in Plaintiffs' Complaint. *Holick v. Cellular Sales of N.Y., LLC*, 802 F.2d 391, 395 (2d Cir. 2015) (citing *Smith/Enron Cogeneration Ltd. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 99 (2d Cir. 1999)). "If the allegations underlying the claims touch matters covered by the parties' . . . agreements, then those claims must be arbitrated, whatever the legal labels attached to them." *Id.* (quoting *Smith/Enron*, 198 F.3d at 99).

Here, the Contract's arbitration clause covers all disputes, defined as follows:

> A "Dispute" is "any controversy or claim between You [Buyers] and Us [Affordable Motors, Credit Acceptance, and their employees, assignees, or any third party providing any goods or services in connection with the origination, servicing, and collection of amounts due under the Contract] arising out of or in any way related to this Contract, including, but not limited to, any default under this Contract, the collection of amounts due under this Contract, the purchase, sale, delivery, set-up, quality of the Vehicle, advertising for the Vehicle or its financing, or any product or service included in this Contract. "Dispute" shall have the

8

> broadest meaning possible, and includes contract claims, and
> claims based on tort, violations of laws, statutes, ordinances or
> regulations or any other legal or equitable theories.
> Notwithstanding the foregoing, "Dispute" does not include any
> individual action brought by You in small claims court or Your
> state's equivalent court, unless such action is transferred, removed
> or appealed to a different court. "Dispute" does not include any
> repossession of the Vehicle upon Your default and any exercise of
> the power of sale of the Vehicle under this Contract or any
> individual action by You to prevent Us from using any such
> remedy, so long as such individual action does not involve a
> request for monetary relief of any kind. In addition, "dispute" does
> not include disputes about the validity, enforceability, coverage or
> scope of this Arbitration Clause or any part thereof (including,
> without limitation, the Class Action Waiver described in the sixth
> paragraph of this Arbitration Clause, the last sentence of the
> seventh paragraph of this Arbitration Clause and/or this sentence

Contract at 5.

The claims made in the Complaint—which allege, *inter alia*, literal breaches of contract by Defendants and misrepresentations both during and after the execution of the Contract—unquestionably relate to or arise out of the Contract by the arbitration agreement's own terms, and therefore "touch matters covered" by the arbitration clause. *Holick*, 802 F.2d at 395 (quoting *Smith/Enron*, 198 F.3d at 99).

Moreover, in failing to respond to the motion or the order to show cause, Plaintiffs have failed to put forward any evidence to rebut the evidentiary facts put forward by Credit Acceptance as to the scope of the Contract. *Oppenheimer*, 56 F.3d at 358 ("If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried.")

For both these reasons, the Court finds that the claims in this lawsuit fall within the scope of the arbitration agreement.

## IV. CONCLUSION

For the reasons explained above, Credit Acceptance's motion to compel arbitration is **GRANTED**. The Court orders the parties to arbitrate these claims. These proceedings are hereby **STAYED** under 9 U.S.C. § 3.

The Clerk of the Court is directed to administratively close this case due to the stay of these proceedings. If the parties require additional relief from this Court following the arbitration, they may move to re-open this case.

**SO ORDERED** at Bridgeport, Connecticut, this 30th day of November, 2018.

    /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge